2026 Tex. Bus. 9



**THE BUSINESS COURT OF TEXAS**
**ELEVENTH DIVISION**

| | | |
|---|---|---|
| ANGELA YAUN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Cause No. 25-BC11B-0094 |
| | § | |
| BATTLE & SANDS ENERGY CORP., | § | |
| *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

---

**MEMORANDUM OPINION AND ORDER**
**DENYING PLAINTIFF'S MOTION TO REMAND**

---

¶1    Before the Court is a Motion to Remand ("Motion") filed by Plaintiff Angela Yaun ("Yaun"), challenging the Texas Business Court's jurisdiction over Defendants' removal of this case from district court. Having considered the Motion, the response, the pleadings, and the applicable law, the Court **DENIES** the Motion for the reasons set forth below.

### I. BACKGROUND

¶2    Yaun sued Defendants alleging a breach of an agreement to pay her a perpetual royalty on frac sand sold from a quarry in Beeville, Texas. She asserts claims for

breach of contract, equitable estoppel, quasi-estoppel, fraud, and statutory relief under the Texas Sales Representative Act ("TSRA"), based upon Defendants' failure to pay her despite her "spending significant time and effort to develop and market [Defendants'] frac sand mine." *Plaintiff's Original Petition at ¶18*. Defendants removed the action to the Business Court, asserting jurisdiction under TEX. GOV'T CODE §25A.004(d)(1). Yaun moved to remand, arguing that: (1) the dispute does not involve a qualified transaction; and (2) the amount in controversy does not meet the $10 million threshold she believes applies to cases filed in August 2025. The Court addresses each contention in turn.

## II. LEGAL STANDARD

¶3     Subject matter jurisdiction is a question of law that involves a court's power to hear a case.[1] In the Business Court, a plaintiff must plead facts that affirmatively show jurisdiction, or a removing party must plead facts to establish the Court's authority to hear the action.[2]

¶4     When a jurisdictional challenge is based on the amount in controversy, it is ordinarily decided solely on the pleadings.[3] The amount in controversy is defined as "'the sum of money *or the value of the thing originally sued for.*'"[4] Under the Business Court's established burden-shifting standard, a party's good-faith allegation of damages controls

---

[1] *Tellez v. City of Socorro*, 226 S.W.3d 413 (Tex. 2007).

[2] TEX. R. CIV. P. 354(a), 355(b)(2)(A).

[3] *C Ten 31, LLC v. Tarbox*, 2025 Tex. Bus. 1, at ¶¶47-51, 708 S.W.3d at 243.

[4] *Tune v. Tex. Dep't of Pub. Safety*, 23 S.W.3d 358, 361 (Tex. 2000) (*quoting Gulf, C. & S.F. Ry. Co. v. Cunnigan*, 67 S.W. 888, 890 (Tex. 1902)) (emphasis in original).

unless another party presents evidence that the amount was falsely asserted to wrongly obtain or avoid jurisdiction.[5] The proper inquiry is what the parties seek to recover at the time of filing, not what they are likely to recover.[6] If evidence is presented demonstrating that the amount is outside the Court's jurisdiction, the party asserting jurisdiction must present controverting evidence that raises at least a fact issue.[7]

### III. ANALYSIS

#### A. The Dispute Involves a "Qualified Transaction"

¶5    Yaun first argues that this case does not involve a "qualified transaction" under TEX. GOV'T CODE §25A.004(d)(1). The statute defines a qualified transaction as "a transaction, or series of related transactions . . . under which a party: (A) pays or receives, or is obligated to pay or is entitled to receive, consideration with an aggregate value of at least $5 million . . . ."[8] The royalty agreement that Yaun alleges "was made verbally by both Freeman Sands and Kellie Battle and confirmed in writing by Kellie Battle." *Plaintiff's Original Petition at ¶11*. The alleged agreement plainly meets the definition of a qualified transaction, provided that under its terms Yaun may be "entitled to receive" consideration that meets the $5 million threshold.[9]

---

[5] *C Ten*, 2025 Tex. Bus. 1, at ¶¶49-50, 708 S.W.3d at 243.

[6] *M&M Livestock,* 2025 Tex. Bus. 29, at ¶36 ("what matters at this stage is only whether Plaintiffs' pleadings—liberally construed—evidence an intent to recover damages exceeding the minimum jurisdictional limits, regardless of how likely such a recovery might be.").

[7] *C Ten*, 2025 Tex. Bus. 1, at ¶¶49-50, 708 S.W.3d at 243.

[8] TEX. GOV'T CODE §25A.001(14).

[9] Section 25A.004(d)(1) also requires that the damages at issue exceed the minimum jurisdictional dollar amount. But that requirement should pose no impediment here, since it is undisputed that Defendants deny

### B. The Amount in Controversy Requirement Has Been Met

¶6    That resolution leads directly to Yaun's second contention: that neither the qualified transaction at issue nor her damages meet the applicable minimum jurisdictional dollar amount – which she contends should equal or exceed $10 million, respectively.[10] This follows, Plaintiff argues, because the case was filed on August 25, 2025—roughly one week before HB 40 took effect and lowered to $5 million both the "aggregate value" of the qualified transaction and the minimum damages amount required to sustain jurisdiction under §25A.004(d)(1). *See* Act of June 1, 2025 (HB 40), 89th Leg., R.S., Ch. 912, §45, 2025 Tex. Sess. Law Serv. 912.

¶7    But while HB 40 went into effect on September 1, 2025, the Legislature made its changes in law (with one exception not relevant here) applicable "to civil actions commenced on or after September 1, *2024.*" *See id.* at §72 (emphasis added).[11] Accordingly, the transactional and damages dollar threshold applicable to this case is $5 million.

¶8    Yaun acknowledges that Defendants, in their Notice of Removal, pled that the royalty obligations and other rights at issue exceed $5 million, exclusive of interest, statutory damages, exemplary damages, penalties, attorney's fees, and court costs. *Motion at 1-2.* But, Yaun contends, Defendants' "Notice of Removal *fails to present any facts*

---

the contract and have paid no consideration under it. Accordingly, Yaun's damages equate to the dollar amount of consideration that she is entitled to receive under the alleged royalty agreement.

[10] The requisite "aggregate value" was at least $10 million prior to September 1, 2025. *See* Act of May 25, 2023 (HB 19), 88th Leg., R.S., ch. 380 §1, §25A.004(d)(1), 2023 Tex. 3 Sess. Law Serv. 919.

[11] *See also OWL AssetCo I, LLC v. EOG Resources, Inc.,* 2025 Tex. Bus. 47, at ¶4, 726 S.W.3d at 836.

*supporting the allegation* that Defendants' counterclaim involves an amount in controversy sufficient to invoke the Court's jurisdiction . . .." *Id. at 2* (emphasis added).

¶9    But this misstates Defendants' burden. Where, as here, the plaintiff's pleadings are silent on the matter but the removing party's notice pleads that the amount in controversy is within the Business Court's jurisdiction, the removal notice will control unless "(a) a party presents evidence that the amount pleaded is falsely asserted to wrongly obtain or avoid jurisdiction, or (b) a different amount in controversy is readily established, such as by statutorily set fees."[12]

¶10    Yaun does not argue that Defendants have falsely pled the amount in controversy. Rather, she submits a declaration purporting to establish an amount in controversy below the statutory threshold. In relevant part, she testifies:

> 4. An agreement exists between myself and Defendants in which we agreed I would be paid a $1.00-per-ton royalty on all frac sand sold by Defendants.
>
> …
>
> 6. Defendants have not disclosed to me any amounts of frac sand they have sold.
>
> 7. As set out in [Paul] Deville's [COO of defendant Battle & Sands Energy Corporation] Email, Defendants' frac sand operations would be at "full capacity" in January 2025, which Deville estimated to be 2,200 tons per day. By Q3 of 2025, if capital was available, Deville estimated Defendants would be able to sell 200,000 tons of frac sand per month. Using these numbers, the amount Defendants have sold as of December 31, 2025 would be calculated as follows: from January 1 to June 30 (181 days), the estimated production was

---

[12] *C Ten*, 2025 Tex. Bus. 1, at ¶¶49-50; *see also id.* at ¶34 *(*"while the term 'pleading' often refers only to petitions and answers, the jurisdictional allegations in Defendants' notice of removal are part of the 'pleadings' for these purposes.").

2,200 tons per day, which would equal 398,200 tons total. Added to 200,000 per month for Q3 and Q4 of 2025, the maximum amount of frac sand sold would be 1,598,200 tons, meaning the total owed at $1.00 per ton would be $1,598,200.00.

*Declaration of Angela Yaun at ¶¶4-7 (attached to the Motion as Exhibit A).*

¶11    Yaun's best guess, then, is that Defendants could owe her approximately $1.6 million to date should she succeed in proving up her claim, with the possibility of an additional $4.8 million accruing over the next 24 months. This puts in controversy a total of approximately $6.4 million, just for the first three years of the perpetual royalty. While far from conclusive, especially given this preliminary posture,[13] the evidence before the Court plainly establishes the possibility—plausibility, even—that Yaun's damages claim could satisfy the Business Court's jurisdictional minimum for a qualified transaction under §25A.004(d)(1).[14]

### III. CONCLUSION

¶12    Because the value of the perpetual royalty interest sought by Yaun in her Original Petition exceeds the $5 million jurisdictional floor for a qualified transaction, this Court has proper subject matter jurisdiction.

---

[13] A party "should not have to marshal its evidence or prove its claims to survive early jurisdictional challenges." *M&M Livestock v. Robinson,* 2025 Tex. Bus. 29, at ¶22 (*citing Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 805 (Tex. 2018); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 637 (Tex. 2012); and *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)).

[14] Yaun also seeks relief under the TSRA, TEX. BUS. & COMM. CODE Ch. 54, which could separately support Business Court jurisdiction. *See* TEX. GOV'T CODE §25A.004(d)(3). Additionally, Defendants' counterclaim for declaratory judgment would appear to involve rights at issue that, likewise, could exceed $5 million. *See id.* at §25A.004(e); *cf. C Ten 31,* 2025 Tex. Bus. 1, at ¶35, 708 S.W.3d at 238 ("when an action is brought to protect a right or privilege, '[t]he subjective value of a privilege, if asserted in good faith, establishes jurisdiction if that value meets the requisite amount in controversy.'") (*quoting Tune v. Tex. Dep't of Pub. Safety*, 23 S.W.3d 358, 362 (Tex. 2000)).

¶13    Plaintiff's Motion to Remand is hereby **DENIED**.

It is SO ORDERED.


DATED: March 3, 2026

_____
HON. GRANT DORFMAN
JUDGE, TEXAS BUSINESS COURT
ELEVENTH DIVISION